FILED
2006 Aug-31  PM 03:08
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | | |
|---|---|---|
| VERNA MAE SMITH, | ] | |
| | ] | |
| Plaintiff, | ] | |
| | ] | |
| vs. | ] | CV-05-CO-00123-W |
| | ] | |
| CITY OF TUSCALOOSA, | ] | |
| LIEUTENANT EDWARD VAUGHN, | ] | |
| | ] | |
| Defendants. | ] | |

MEMORANDUM OF OPINION

I.    Introduction.

The Court has for consideration defendants City of Tuscaloosa ("the City") and Lieutenant Edward Vaughn's ("Vaughn's") motions for summary judgment, which were filed on March 30, 2006. (Docs. 21 & 22.)  Plaintiff Verna Mae Smith filed suit against Defendants for allegedly having violated her First, Fourth, and Fourteenth Amendment rights under the United States Constitution; 28 U.S.C. §§ 1331, 1343, 2201, 2202; and 42 U.S.C. § 1983 ("§ 1983"), by unreasonably searching her home and disturbing her peaceful enjoyment of it.  (Docs. 1 & 20.)  She also alleges that the conduct of

defendant Vaughn and the other officers was negligent "in that [they] had and owed a duty to Plaintiff to conduct themselves in such a way as to avoid harming Plaintiff." *Id*.  The issues raised in Defendants' motions have been briefed and are now ripe for decision.  Upon full consideration of the legal arguments and evidence presented, Defendants' motions are due to be granted in all respects.

II.    Facts.[1]

Plaintiff executed a lease for the property located at 130 20th Avenue, N.E., Tuscaloosa, Alabama, ("the Premises") for a term from June 4, 2003, until May 31, 2004.  Plaintiff co-leased the Premises with her mother, Eddie Mae Williams, who also resided there with Plaintiff's two sons, Alonzo and Antwain Smith.   Vincent Smith, Plaintiff's brother, also resided at the Premises in 2003 and 2004, and he represented this fact to various governmental officials for licensing purposes and court proceedings.   In

---

[1]The facts set out in this opinion are gleaned from the parties' submission of facts claimed to be undisputed, their respective responses to those submissions, and the Court's own examination of the evidentiary record.  *See Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002).  These are the "facts" for summary judgment purposes only.  They may not be the actual facts.  *See Cox. v. Adm'r U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994).

addition, Vincent Smith carried an identification card listing the Premises as his personal residence.  On October 31, 2003, a warrant was issued for the arrest of Vincent Smith.  Because he had represented that he lived at the Premises, the City's  computer database system listed it as Vincent Smith's primary place of residence.

Plaintiff's lease expired on May 31, 2004, but she continued to live at the Premises without paying rent until August 1, 2004.[2]  Plaintiff contends that beginning in late July, she began the process of moving to Atlanta, Georgia.  Plaintiff alleges that Tuscaloosa Police Officers came to the Premises in February 2004, on July 26, 2004, and on August 4, 2004.[3]

On August 4, 2004, a house near the Premises was burglarized, and Antwain Smith, Plaintiff's son, was suspected to be one of the perpetrators.

_____

[2] The landlord, Margaret Price, delivered a forfeiture notification  to Plaintiff on July 7, 2004, to recover possession of the Premises due to "repeated defaults by the Lessees in payment of the rent required by the lease."  (Doc. 22, Price Affidavit.)

[3] Plaintiff alleged that the police came to the Premises in February 2004 and conducted a search for Vincent Smith, but she later admitted in her deposition that the Premises was not searched that month. (Doc. 22, Verna Smith Depo., p. 131.)  The second time police arrived at the Premises, on July 26, 2004, was to investigate a 911 call reporting a noise disturbance involving a firearm.  (Doc. 22, Verna Smith Depo., pp. 450-57, 459; McKenzie Affidavit.)  No police officer entered the Premises during the July 26, 2004, event, and they were present for no more than fifteen minutes. (Doc. 22, Verna Smith Depo., pp. 120, 131, 306, 457, 460-61, 552-53.)

(Doc. 22, Vaughn Affidavit; Vaughn Depo., pp. 16-17.)  That evening, a Tuscaloosa police officer arrived at the Premises looking for Antwain Smith. Plaintiff told the officer that she had not seen Antwain and that he was not on the property, denying his request to "look around."  (Doc. 22, Verna Smith Depo., p. 496.)  The officer then returned to his vehicle.  Thirty minutes later, the Tuscaloosa Police Officer, accompanied by Lieutenant Vaughn, returned to the Premises.  Vaughn was assigned to the Criminal Investigation Division of the City of Tuscaloosa Police Department, and he had just left the scene of the nearby burglary.  (Doc. 22, Vaughn Depo., pp. 16-17, 25.)  Upon arrival, Vaughn noticed several people inside the Premises.  He stated that given the time of day, his belief that the Premises was Vincent Smith's residence, and his knowledge that Vincent Smith was unemployed led him to believe that Vincent Smith was inside the house. (Doc. 22, Vaughn Affidavit; Vaughn Depo. pp. 17-19.)

Vaughn approached the Premises and inquired whether Vincent Smith was inside.  Plaintiff replied to Vaughn that Vincent Smith was not present and that she did not know where he lived.  (Doc. 22, Verna Smith Depo., p. 492.)  Vaughn suspected that Plaintiff was protecting her brother from the

law.   Vaughn did not find her credible and entered the Premises under Plaintiff's protest.  Vaughn and two other officers searched the Premises for Vincent Smith.  They were unsuccessful after searching the Premises for ten minutes.

None of the police officers ever touched Plaintiff, threatened her with violence in order to search the Premises, drew a weapon, used racial slurs or curse words, or damaged her property.[4]  (Doc. 22, Verna Smith Depo., pp. 517, 527, 533-36, 545.)  In her deposition, Plaintiff alleges that when she told Lieutenant Vaughn he could not search the inside of the home, he responded that "either [you] get out of the way or [you are] going to jail for obstruction of government."  *Id.* at 497, 512.  Plaintiff claims that she never consented to a search of her home and only reluctantly admitted the officers after "an overwhelming show of governmental force."[5]  (Doc. 28, p. 13.)

---

[4]  There is no record of Plaintiff ever communicating with the city council or the police department regarding her alleged complaints.

[5]Plaintiff alleges for the first time in her response to Defendants' motions for summary judgment that Lieutenant Vaughn opened and searched a shoe-box in her bedroom closet.  (Doc. 28, p. 13.)  She also alleges that Vaughn searched Alonzo Smith's bedroom.  *Id.*  Lieutenant Vaughn denies both allegations.  (Doc. 29, p. 3.)

III.   Standard.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admission on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the evidence] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant can meet this burden by presenting evidence showing that there is no genuine dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id*. at 322-23.  In evaluating the arguments of the movant, the courts must view the evidence in the light most favorable to the nonmoving party. *Mize v. Jefferson City Bd. of Educ*., 93 F.3d 739, 742 (11th Cir. 1996).

Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or

by the 'depositions, answers to interrogatories, and admission on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex,* 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)).  "A factual dispute is genuine only if a 'reasonable jury could return a verdict for the nonmoving party.'" *Info. Sys & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002) (quoting *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991)).

IV.    Discussion.

Plaintiff has alleged claims against the City and Vaughn for violating her First, Fourth, and Fourteenth Amendment rights under the United States Constitution, as well as claims for negligence arising out of searches of her home occurring on July 26 and August 4, 2004.

A.    The City.

The City, citing *Monell v. Dept. of Social Svcs.*, 436 U.S. 658 (1978), argues that it is entitled to summary judgment because local governments cannot be held liable under § 1983 when such liability is premised upon the doctrine of respondeat superior.  (Doc. 22, p. 12.)  Furthermore, the City contends that it is entitled to summary judgment on Plaintiff's negligence

claims because: 1) she has not adduced evidence that the officers violated the standard of care; 2) the conduct described by Plaintiff would be classified as intentional rather than negligent; and 3) even if the conduct was mere negligence, the City would be entitled to state agent immunity under Ala. Code § 6-5-338.  *Id*. at 14.

      1.     Alleged Constitutional Violations.

     Plaintiff alleges that the City violated her constitutional rights  when police officers "demanded that Plaintiff open the door" to the Premises on July 26, 2004, in response to a 911 emergency call reporting a disturbance on the property involving a firearm.   Even though Plaintiff denied any knowledge of a 911 call, she testified that she could not rule out that someone else made the call.  (Doc. 22, Verna Smith Depo., p. 451.)  The City argues that they were merely responding to an emergency call, and that 911 calls have been upheld as a sufficient basis for warrantless entry of a home.  *See U.S. v. Holloway*, 290 F.3d 1331 (11th Cir. 2002).  In fact, the City argues that it had a right, if not a duty, to knock on Plaintiff's door and seek visual verification that its occupants were safe.  (Doc. 22, p. 16.)  Plaintiff had previously made calls to the police department requesting

assistance in removing unwanted guests from her home and to deal with violence committed by her sons at the Premises.  (Doc. 22, Verna Smith Depo., pp. 122-26, 164-65.)  Because the officers were responding to a 911 call that they had reason to believe originated at the Premises, the officers did not violate Plaintiff's constitutional rights by searching the Premises on July 26, 2004.  However, even if the officers acted in violation of Plaintiff's constitutional rights, the City contends that it is entitled to summary judgment for both the July 26 and August 4, 2004, events.

Section 1983 provides a legal mechanism through which a plaintiff may impose liability upon individuals and entities that act under color of state law to deprive the plaintiff of Constitutional and statutory rights.  42 U.S.C. § 1983.  However, local governments cannot be held liable under a theory of respondeat superior for claims brought under § 1983.  *Monell*, 436 U.S. at 691, 694-95.  Instead, there must be some evidence that a municipal policy or custom caused the constitutional injury.  *See Leatherman v. Tarrant Co. Narcotics Intelligence and Coordination Unit*, 507 U.S. 163 (1991); *see also McMillan v. Monroe County, Ala.*, 520 U.S. 781, 784 (1997) ("A municipality cannot be held liable under *Monell* where the alleged wrongful conduct is

*contrary* to its official policy.").  In order to show that a city bears responsibility for the acts of its police officers, a plaintiff must demonstrate that the constitutional violations occurred: "(1) pursuant to official City policy; (2) as the result of a policy decision by a final City decision maker; or (3) as a result of a custom so ingrained in City operations as to acquired the force of official City policy." *Libman v. City of Avondale Estates*, 2006 WL 1933725, at *3 (11th Cir. July 12, 2006) (citing *Monell*, 436 U.S. at 690-91). *See also Pembaur v. Cincinnati*, 475 U.S. 469, 480-83 (1986) (requiring a three-part test for determining when the acts of a municipal officer subjects a municipality to liability under section 1983: (1) the municipality officially sanctioned or ordered the act; (2) the actor was a municipal officer with final policymaking authority; or (3) the action was taken pursuant to a policy adopted by officials responsible under state law for making policy in that area).

Plaintiff has not met her burden of establishing that the City bears responsibility for the alleged acts of its officers.  In fact, she testified at her deposition that she did not know whether any of the acts or omissions of the police officers violated any policy or custom of the City.  (Doc. 22, Verna

Smith Depo., pP. 114-16.)  Plaintiff does not even argue that the officers violated her constitutional rights pursuant to an official City policy, as the result of a policy decision by a final decision maker, or as a result of a custom so ingrained in City operations as to have acquired the force of official City policy.  Without directing the Court's attention to a policy, policy decision, or custom of the City according to which the officers acted in violation of her constitutional rights, Plaintiff has not met her burden under *Monell*.

> 2.    Claim of Negligence by the City.

Plaintiff claims that the City was negligent for having inadequately trained and supervised Vaughn and the other officers in proper "investigative procedures."  (Doc. 20, p. 6.)  She alleges that this failure led to "deliberate indifference" to the rights of those citizens who came in  contact with City officials.  *Id*.  Plaintiff contends that failure to train is representative of the customs adhered to by the City.  Plaintiff asserts that the alleged negligence was the proximate cause of her "pain, suffering, embarrassment, humiliation, extreme mental anguish and severe emotional distress, loss of time, and loss of income." *Id*.

The City is not liable for any state law claim for negligence raised by Plaintiff for two reasons.  (Doc. 22, p. 14.)  First, Plaintiff has provided no evidence that the officers ever violated the standard of care required under the City's policies.  *Id*.  In Alabama, the traditional elements for a cause of action based upon negligence are a duty to a foreseeable plaintiff, breach of that duty, causation, and damages.  *See AALAR, Ltd., Inc. v. Francis*, 716 So. 2d 1141, 1144 (Ala. 1998).   Second, even if the conduct described constituted mere negligence, the City would be entitled to state agent immunity by virtue of Ala. Code § 6-5-338.  That section provides police officers with "immunity from tort liability for conduct in the line of duty." *Swan v. City of Hueytown*, 920 So. 2d 1075, 1077 (Ala. 2005) (finding that an attempt to execute an arrest warrant was a discretionary function and that the city was immune).  The officer has "immunity from tort liability arising out of his or her conduct in performance of any discretionary function within the line and scope of his or her law enforcement duties."  Ala. Code § 6-5-338; *see also City of Birmingham v. Sutherland*, 834 So. 2d 755 (Ala. 2002) (holding that making warrantless arrests is a discretionary function thereby providing immunity to the city).

Plaintiff has not contested the City's argument that it is entitled to summary judgment with regard to her claims based upon the alleged incidents in February and July of 2004.  Furthermore, with regard to the August 4, 2004, incident, Plaintiff has adduced no facts and made no argument in an effort to overcome the *Monell* doctrine or Ala. Code §§ 11-47-190 and 6-5-338.  For these reasons, the City's motion for summary judgment is due to be granted in all respects.

B.    Lieutenant Vaughn.

Plaintiff alleges that the entry and search of the Premises on August 4, 2004, violated her right to be free from unreasonable searches.[6]  (Doc. 1.) Defendant Vaughn seeks summary judgment based on qualified immunity as to Plaintiff's allegations of constitutional violations and state agent immunity under Ala. Code § 6-5-338 as to Plaintiff's claims of negligence.  (Doc. 21.)

---

[6]Defendants correctly point out that although Plaintiff generally refers to search and "seizure" in her statement of claims, she admits that she was not arrested.  (Doc. 21, Verna Smith Depo., p. 536.)  She also refers to a violation of her right of association but has adduced no evidence to support such a claim.  In particular, Defendants note that there is no evidence that Plaintiff was ever prohibited from associating with anyone.

1.    Plaintiff's § 1983 Claim.

Vaughn argues that he is entitled to summary judgment on Plaintiff's § 1983 claims on the grounds of qualified immunity.  (Doc. 21.)  The first step in analyzing any case asserting the defense of qualified immunity "is to determine . . . whether the plaintiff has alleged a deprivation of a constitutional right."  *County of Sacramento v. Lewis*, 523 U.S. 833, 841 n. 5 (1998).  Plaintiff asserts that her Fourth Amendment rights were violated when Lieutenant Vaughn entered and searched the Premises on August 4, 2004.  She contends that "[t]he search of her home far exceeded the scope of a permissible search in support of an arrest warrant, and the police excess amounted to a constitutional violation."  (Doc. 28, p. 16.)  Plaintiff argues that Vaughn violated her Fourth Amendment rights when he entered her home without a valid search warrant after she told him he could not enter.  *Id.*  Finally, Plaintiff cites to the case of *Minnesota v. Carter*, 525 U.S. 83, 95 (1998), for the proposition "that a man's home is his castle" whether he owns, rents, or is there rent-free.  *Id.* at 96.[7]

---

[7]Plaintiff believes that the officers "exceeded the scope of an arrest warrant by looking in drawers and other places that Vincent Smith could not have been.  Defendant Vaughn opened and searched a shoe box in Plaintiff's bedroom."  (Doc. 28, p. 18.)  In

a.    Alleged Constitutional Violations.

To assert a claim based upon an unreasonable search and/or seizure, a plaintiff must establish that she had a legitimate expectation of privacy in the area searched.  *See U.S. v. Brazel*, 102 F.3d 1120, 1147-48 (11th Cir. 1997), *cert. denied*, 522 U.S. 822 (1997).  Defendants note that although Plaintiff had a leasehold interest in the Premises at one time, she admits that the lease expired on May 31, 2004, and that she did not pay any further rent. (Doc. 21, Verna Smith Depo., pp. 51, 471.)  On July 7, 2004, Plaintiff's landlord declared a forfeiture of the lease and gave notice that legal proceedings to recover possession of the Premises would be instituted.  (Doc. 21, Price Affidavit.)  The landlord had already entered into a lease of the Premises with an unrelated third party prior to August 1, 2004.  (Doc. 20.) Plaintiff responded that she would vacate the Premises by August 1, and she had already moved "just about everything" from the house by August 4.

---

their reply, Defendants deny that this occurred.  (Doc. 29, p. 3.)  Plaintiff first presented this argument in her response to Defendants' motions for summary judgment.  She did not contend that the officers exceeded the scope of the search in her part of the Joint Status Report.  She omitted any mention of Defendant Vaughn opening a shoe box, which precluded him from addressing any such argument in either the Joint Status Report or his motion for summary judgment.  Furthermore, the pages of the deposition cited by Plaintiff to support her contention that the officers searched "drawers and other places" simply do not mention such a search.  (*See* Doc. 28, Exhibit 1, pp. 520-21.)

(Doc. 21, Verna Smith Depo., pp. 478, 485, 510.)  She also testified that she had not slept at the house for several days.  *Id.*; *see, e.g., United States v. Ross*, 43 Fed. Appx. 751, 757-58 (6th Cir. 2002) (finding the defendant's expectation of privacy not objectively reasonable at the time of the searches because his lease had expired and the terms of the lease obligated him to vacate the premises upon his failure to pay rent); *United States v. Croft*, 429 F.2d 884, 887 (10th Cir. 1970) (holding that once "the rental period has elapsed, [a hotel] guest has completely lost his right to use the room and any privacy associated with it."); *United States v. Rhame*, 813 F.2d 31, 34 (2nd Cir. 1987) (explaining that when a hotel guest's rental period expires the guest no longer has a legitimate expectation of privacy in the hotel room, which remains the rule even when the individual retains a significant property interest, such as retaining access to the premises).  However, the new tenant had not taken possession of the Premises by August 4, and there is no evidence that the landlord had obtained an eviction order requiring Plaintiff to vacate the Premises.  It appears to the Court that Plaintiff arguably had a legitimate expectation of privacy in the Premises at the time of the search.

It is also undisputed that at the time of the August 4 search, there was an outstanding warrant for the arrest of Vincent Smith.  (Doc. 21, Vaughn Affidavit.)   An outstanding arrest warrant authorizes law enforcement officers to enter and search a residence if there is reason to believe that the arrestee both resides there and is inside at the time of the search.  *See, e.g., United States v. Magluta*, 44 F.3d 1530, 1533-36 (11th Cir. 1995), *cert. denied*, 516 U.S. 869 (1995).  In *Magluta*, the Court reiterated the two part inquiry established under *Payton v. New York*, 445 U.S. 573 (1980):

> [I]n order for law enforcement officials to enter a residence to execute an arrest warrant for a resident of the premises, the facts and circumstances within the knowledge of the law enforcement agents, when viewed in the totality, must warrant a reasonable belief that the location to be searched is the suspect's dwelling, and that the suspect is within the residence at the time of entry.

*Id.* at 1535.  An officer's assessment need not be correct as long as it is supported by a reasonable belief that the suspect resides at the dwelling and is currently present.  *United States v. Risse*, 83 F.3d 212, 216 (8th Cir. 1996). The fact that others reside in a home does not preclude the existence of a reasonable belief that an arrestee also resides there and is present at the time of the search.  *Accord Risse*, 83 F.3d at 216 ("However, 'if the suspect

is a co-resident of the third party, then *Steagald* [*v. United States*, 451 U.S. 204 (1981)] does not apply, and *Payton* allows both arrest of the subject of the arrest warrant and use of evidence found against the third party.'"). The fact that an occupant of the home denies that the suspect either resides there or is present does not prevent an officer from having the requisite reasonable belief. *See Todosijevic v. County of Porter, Indiana*, 2005 WL 3279387, at *7-8 (N.D. Ind. December 2, 2005).

It is undisputed that Vincent Smith actually lived at the Premises with Plaintiff's mother for several years and considered it to be his official residence. In fact, throughout the period which Plaintiff lived there, Vincent Smith represented to police officers, license commission office personnel, and even court officials that the Premises was his residence. (Doc. 21, Vincent Smith Depo., pp. 10-11, 17-25, 30-31, 40.) As a result, the City of Tuscaloosa police department's computer, called "Spillman," listed the Premises as Vincent Smith's residence. Vaughn was aware of this fact, and, therefore, had reason to believe that Vincent Smith resided on the Premises. (Doc. 21, Vaughn Affidavit, p.3.)

Even though Plaintiff represented to the officers that her brother was not present, Lieutenant Vaughn had reason to believe that Vincent Smith was present given the time of day, the absence of any information that Vincent Smith was employed, and the presence of numerous persons at the Premises. *See, e.g., Magluta*, 44 F.3d at 1535-36, 1538 n. 11 (indicating that the absence of facts tending to show that a person is not at home, such as information about employment, provides reason to infer that he would be present); *United States v. Bervaldi*, 226 F.3d 1256, 1267 (11th Cir. 2000) (finding that police officers may infer that the occupant of a house is present where there is evidence that others are present inside the home); *Anderson v. Campbell*, 104 F.3d 367 (10th Cir. 1996) (unpublished table decision) (holding that the officers had no obligation to "accept on faith the assertion of the suspect's father that the suspect was not there."); *United States v. Route*, 104 F.3d 59, 62-63 (5th Cir. 1997) (determining that evidence of the presence of persons, even though unseen, gave rise to a reasonable belief that the suspect was present); *Todosijevic v. County of Porter, Indiana*, 2005 WL 3279387 (explaining that a police officer could have reasonably been suspicious of the truthfulness of denials by persons with whom the suspect

has a relationship).  For these reasons, Lieutenant Vaughn's actions appear to meet the reasonable belief standard enunciated by the Eleventh Circuit in *Magluta*, 44 F.3d at 1533-36.

                    b.     Qualified Immunity.

Even if there was a violation of Plaintiff's Constitutional or statutory rights, Defendants contend that the doctrine of qualified immunity shields Lieutenant Vaughn from any potential liability.  The seminal case regarding qualified immunity is *Harlow v. Fitzgerald,* 457 U.S. 800 (1982), which held that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate 'clearly established' statutory or constitutional rights of which a reasonable person would have known."  *Id.* at 818; *see also Lee v. Ferraro*, 284 F.3d 1188, 1193-94 (11th Cir. 2002); *Maggio v. Sipple*, 211 F.3d 1346, 1350 (11th Cir. 2000).  The purpose of qualified immunity is to "ensure that before they are subjected to suit, officers are on notice their conduct is unlawful."  *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (quoting *Saucier v. Katz*, 535 U.S. 194, 206 (2001)).  Police officers, such as Vaughn, are entitled to qualified immunity as long as their actions are not in clear violation of any

Constitutional or statutory law.  *Brosseau v. Haugen*, 543 U.S. 194, 198
(2004).

Lieutenant Vaughn was clearly a government official.  Therefore, to
determine whether he is entitled to qualified immunity, the Court must make
a two-step inquiry.  *See, e.g., Maggio*, 211 F.3d at 1350.  First, the Court is
to consider whether "the defendant government official [has proved] that he
was acting within the scope of his discretionary authority when the alleged
wrongful act occurred."  *Id.* (internal quotations omitted) There does not
appear to be any dispute regarding this issue.

Since it appears that he was acting within his authority, the Court must
turn to "whether [Plaintiff] has demonstrated that [Lieutenant Vaughn]
'violated clearly established law.'" *Id.* (quoting *Gonzales*, 161 F.3d at 1295).
The burden is on Plaintiff to demonstrate that Vaughn:

> had fair notice that [his] conduct was unlawful . . . judged
> against the backdrop of the law at the time of the conduct.
> If the law at that time did not clearly establish that [his]
> conduct would violate the Constitution, [Defendant
> Vaughn] should not be subject to liability or, indeed, even
> the burdens of litigation.

*Brosseau v. Haugen*, 543 U.S. at 198.   The Court's inquiry "must be undertaken in light of the specific context of the case, not as a broad proposition."   *Id.* at 198-99 (quoting *Saucier v. Katz*, 533 U.S. at 201). Furthermore, as Plaintiff notes in her response, the question of whether a defendant is entitled to qualified immunity must be decided with reference only to undisputed facts and in isolation from the remaining issues of the case.  *See Sheth v. Webster*, 145 F.3d 1231, 1236 (11th Cir. 1998) (quoting *Johnson v. Jones*, 515 U.S. 304, 313 (1995)).

The law that was applicable at the time of Lieutenant Vaughn's actions on August 4, 2004, did not clearly establish that his conduct violated any Constitutional or statutory rights.  Vaughn acted consistent with the decision in *United States v. Magluta*, where the Court held that a police officer may enter a residence to execute an arrest warrant if he has a "reasonable belief that the location to be searched is the suspect's dwelling, and that the suspect is within the residence at the time of entry."  44 F.3d at 1533-36. Lieutenant Vaughn's actions appear to the Court to have met the reasonable belief standard enunciated by the Eleventh Circuit as the standard that is applicable to cases such as the one at hand.  Therefore, Vaughn did not

violate any clearly established law, and he is entitled to the shield provided by the doctrine of qualified immunity.

        2.     Plaintiff's Claims of Negligence.

Plaintiff's second claim against Vaughn is one of negligence.  She alleges that the "conduct by Vaughn and the other officers constitute negligent behavior in that [they] had and owed a duty to Plaintiff to conduct themselves in such a way as to avoid harming Plaintiff."  (Doc. 1, p. 8.)

As to the negligence claim against Lieutenant Vaughn, Plaintiff's sole argument appears to be that she "thinks" Vaughn's conduct on August 4, 2004, was negligent, but later she admitted that she knew nothing of the training involved with regard to police searches and procedures. (Doc. 21, p. 13.)  *See Madison v. Weldon*, 446 So. 2d 21 (Ala. 1984).  Additionally, because Vaughn was acting within the scope of his employment and was using his discretionary authority provided to him by the City, he is entitled to the protection of "state agent immunity." Ala. Code § 6-5-338; *see also* Ala. Const., Art. 1, § 14 (1901).  By using his best judgment under the circumstances surrounding the search of the Premises for Vincent Smith, Vaughn is protected from liability under § 6-5-338.  Further, as explained

heretofore, there is no evidence that Lieutenant Vaughn breached any duty whatsoever.   Simply stated, there was no negligent act.   Therefore, Lieutenant Vaughn's motion for summary judgment is due to be granted with respect to Plaintiff's claims of negligence.

V.   Conclusion.

For the reasons stated above, Defendants' Motions for Summary Judgment are due to be granted in all respects.   A separate order in conformity with this opinion will be entered.

Done this 31st day of August 2006.

_____

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
124153